

NUMBER 13-14-00503-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAVID CALDERON,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

**On appeal from the County Court at Law No. 3
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides**

The State charged appellant David Calderon by information for assaulting his ex-wife, Tiffany Shely, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01 (West, Westlaw through Ch. 46 2015 R.S.). Calderon pleaded not guilty to the charge and was found guilty after a bench trial, sentenced to one year in the Nueces County Jail, but the

trial court suspended his sentence and placed him on community supervision for one year. By one issue, Calderon appeals the trial court's judgment and asserts that the evidence is insufficient to sustain his conviction. We affirm.

## I. BACKGROUND

Shely testified that she and Calderon were married for eleven years, had three children together, Child M, Child R, and Child D,[1] and divorced in August 2011. Shely stated that on the morning of March 2, 2012, she had loaned Calderon $65 on the condition that Calderon agreed to pay her back later that day. When he failed to pay her, Shely located Calderon's vehicle, which was parked at his friend's apartment, and removed a backpack located inside of the vehicle. Shely stated that she knew that by taking his backpack, Calderon would contact her and pay her back. According to Shely, shortly before midnight, Calderon showed up at her apartment, knocked on her door, and demanded the return of his backpack. Shely denied Calderon entry to the apartment, but Child R opened the door and allowed Calderon into the apartment.

Shely testified that once Calderon entered the apartment, Calderon used both of his hands to throw her "against her computer desk and everything shattered from there." Shely described Calderon's demeanor that night as "crazy" and "angered," and stated that the force of Calderon's throw was an "eight" on a scale of one to ten. After throwing her, Calderon took his bag, as well as her cellular phone charger, and left the apartment. Shely did not call the police. However, she stated that the police arrived within ten minutes after the incident. Two photographs, which were taken by investigators at the Corpus

---

[1] We will use aliases in order to protect the minors' identities.

Christi Police Department, were admitted into evidence and exhibited bruising to Shely's thigh and lower back, which she alleged were the result of being thrown onto the computer desk.

Officer Eric Smith of the Corpus Christi Police Department testified that he responded to a call at the Fountains Apartments in the early morning hours of March 3, 2012. At the scene, Officer Smith made contact with Shely, who told him that Calderon had entered into her apartment and assaulted her. Officer Smith stated that Shely was "shaken up, crying, [and] just visibly disturbed by the whole incident." During the course of his investigation, Officer Smith did not speak to any of Shely's children nor did he speak with Calderon.

Child M testified in Calderon's defense. According to Child M's testimony, she witnessed the events of March 3, 2012 and did not witness Calderon hit, push, or touch Shely. Instead, Child M stated that she saw Shely hit Calderon and yelled at him to "leave the bag" as he was trying to leave the apartment. Child M admitted, however, that she did not observe the moment that Calderon walked into the apartment.

Finally, Calderon testified that he was at a friend's house for a barbeque on March 2, 2013, when Shely called him and asked him for money to purchase shoes for Child M. Calderon stated that he obliged, and Shely picked him up from his friend's house, they both went to his bank, and he withdrew money to give to Shely. After visiting the bank, Shely returned Calderon to his friend's house. Calderon stated that Shely returned later that afternoon and asked Calderon for more money. When he declined to give her more money, Shely opened his truck, took his work bag, and left in her vehicle. Calderon stated that he "wasn't going to make a big deal about" Shely taking his bag because he

3

"wasn't going to go to work the next day." However, Calderon testified that he received a call later that day asking him to report to work the next day at 6 a.m. Calderon stated that he then called Shely and asked her to return his bag, but she refused to return his bag unless he paid her more money. Shortly before midnight on March 2, 2012, Calderon traveled to Shely's apartment and called her to notify her that he was outside of her apartment.

When Shely did not answer her phone, Calderon stated that he knocked on her apartment door, but she did not answer. Calderon testified that Child R then opened the door and allowed him into the apartment. According to Calderon, he asked Child R if he knew where his work bag was, and Child R directed Calderon to a bedroom where the bag was located. Calderon described the following events that took place as he attempted to leave the apartment:

> [Shely] started getting a little loud, and I made a comment and I guess I maybe shouldn't have made. But I said something to her about take—the way she was taking care of the kids. And she slapped me. When she slapped me, I just took a step back and looked at the children. When I tried to walk to the door, she—the only time I got close to her is when I was walking out.

Calderon denied pushing Shely, and testified that he exited the apartment after she slapped him and called the police to "do a welfare check" on Shely.

The trial court found Calderon guilty as charged, sentenced him to one year imprisonment in the Nueces County Jail, suspended the sentence, and placed Calderon on community supervision for one year. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By his sole issue, Calderon asserts that the evidence is insufficient to sustain his conviction.

### A. Standard of Review

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the fact-finder's credibility and weight determinations because the fact-finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

defendant was tried. *Id.* Under a hypothetically correct jury charge, Calderon is guilty of assault if he intentionally, knowingly, or recklessly caused bodily injury to Shely. *See* TEX. PENAL CODE ANN. § 22.01.

### B. Discussion

The record in this case undisputedly shows that Calderon visited Shely's apartment in the late-night hours of March 2, 2012 to retrieve his work bag that was taken earlier that day from his vehicle by Shely. The record conflicts at this point.

According to Shely, Calderon proceeded to her apartment door "kicking" and "banging" on her apartment door, demanding that she return his bag. Child R then proceeded to open the door for Calderon, and as Calderon entered the apartment, he grabbed Shely with both of his hands and threw her against a computer desk that she kept in her apartment, which caused large bruising to her lower back and thigh, as depicted by photographs entered into evidence. Officer Smith testified that he arrived that evening to discover Shely "shaken up, crying, [and] just visibly disturbed by the whole incident."

According to Calderon, he knocked on Shely's apartment door, asked her to open the door, and threatened to call the police and report that she had stolen his bag, if she did not open the door. Calderon testified that he then entered Shely's apartment after Child R opened the door to the apartment. Once inside the apartment, Calderon retrieved his bag, and as he attempted to leave, he told Shely to "stop smoking crack, [and] take care of the kids." Calderon testified that at that point, Shely slapped him, he left the apartment, and called the police to conduct a "welfare check" on Shely. Calderon denied pushing Shely that night. Child M testified that she witnessed the events that

6

evening and did not witness Calderon touch Shely, but did witness Shely slap Calderon. Child M admitted, however, that she did not observe Calderon initially enter the apartment.

While we acknowledge that conflicts exist in this record, reconciliation of conflicts in the evidence is within the exclusive province of the fact finder, and the fact-finder may choose to believe some testimony and disbelieve other testimony. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). So long as enough credible testimony exists to support the accused's conviction, the conviction will stand. *Id.* Here, the trial court, sitting as the finder of fact, acted within its exclusive province to believe Shely and Officer Smith's testimony over Calderon and Child M's testimony. Furthermore, even if the trial court believed Child M's testimony in its entirety, Child M testified that she did not witness Calderon enter the apartment, which is when Shely alleged that he committed the assault.

We hold that after considering all of the evidence in the light most favorable to the verdict, and giving deference to the trial court's credibility and weight determinations, a rational fact finder could have found that Calderon assaulted Shely beyond a reasonable doubt. Calderon's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
30th day of July, 2015.